IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 12, 2017 Session

## STATE OF TENNESSEE v. DAVID SMITH, JR.

**Appeal from the Criminal Court for Davidson County**
**No. 2015-C-1984    Monte Watkins, Judge**

_____

### No. M2017-00902-CCA-R3-CD

_____

The Appellant, David Smith, Jr., pled guilty in the Davidson County Criminal Court to robbery with the trial court to determine the length and manner of service of the sentence. After a sentencing hearing, the trial court ordered that he serve four years in confinement. On appeal, the Appellant contends that the trial court erred by denying his request for judicial diversion or probation. Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and TIMOTHY L. EASTER, JJ., joined.

Manuel B. Russ (on appeal) and David von Wiegandt (at trial), Nashville, Tennessee, for the appellant, David Smith, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Glenn R. Funk, District Attorney General; and Deborah Housel and Kristen Kyle-Castelli, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

In August 2015, the Davidson County Grand Jury indicted the Appellant for aggravated robbery in which the victim suffered serious bodily injury and driving on a suspended license. On March 17, 2017, he pled guilty to robbery, a Class C felony, and the State dismissed the remaining charge. Pursuant to the plea agreement, the trial court was to determine the length and manner of service of the sentence.

The Appellant's guilty plea hearing transcript is not in the appellate record. However, according to the Appellant's presentence report, police officers were dispatched to the Kroger store on Old Hickory Boulevard in Hermitage on July 5, 2015. When they arrived, sixty-six-year-old Melanie Mundy was lying on the ground. The victim had been loading her groceries into the trunk of her car when a black GMC Yukon pulled up to the vehicle, and the driver grabbed her purse from the back of her shopping cart. The victim also grabbed her purse, and the driver of the Yukon accelerated. The victim continued holding onto her purse until she fell to the pavement. She suffered injuries to her head and the right side of her body. The victim gave a description of the driver to the police, and her son used the "Find my iPhone" application to track the victim's cellular telephone. The "app" showed the phone was at the Avalon Apartments. Police officers went to the apartment complex and saw the black Yukon in the parking lot. The engine was idling, and the Appellant, who matched the description given by the victim, was sitting in the driver's seat. The officers stopped the Appellant and took him into custody.

At the Appellant's April 20, 2017 sentencing hearing, the victim read her victim impact statement to the trial court. In the statement, the victim said the following: On the day of the incident, she was "robbed and injured" at the Kroger in Hermitage. Her right arm was "shattered at the ball joint of the shoulder," and she had a large gash above her right eye. Her glasses were broken, she bit through her lower lip, and she had scrapes on the right side of her body. The victim visited doctors and received physical therapy for six months. She was ineligible for shoulder replacement surgery due to prior medical issues, and her arm bone, which had been broken into seven pieces, was allowed to heal on its own. The victim was told she would never recover completely. She suffered "unending horrible pain"; had to have help showering, dressing, and eating because her right hand was her dominant hand; and slept in a recliner for months. When she returned to work in November 2015, she did so on a part-time basis. At the time of the sentencing hearing, she still was working only part time. The victim thought the Appellant "target[ed] an older woman" and noted he could have let go of her purse when she held onto it. Instead, he sped up and knocked her down with his vehicle. The victim experienced pain every day and lived with fear and anxiety every time she went to her car in a parking lot. After reading her statement, the victim said the Appellant should have to serve his sentence in confinement.

Tammy Branham, the Appellant's mother, testified for him that in July 2015, the Appellant, his "baby-mama," and their two children were living with her. The Appellant had moved his family from Memphis in order to find employment and was working at Logan's Steakhouse. Mrs. Branham said the Appellant was a good father, spent "quality time" with his children, and did the best he could to provide for his family. At the time

of sentencing, the Appellant's children were ten and three years old. The Appellant was working at Johnson Solutions, and he and his family were was living in their own home.

Mrs. Branham read a letter written by the owner of Johnson Solutions to the trial court. In the letter, the owner stated that the Appellant had been working for her since August 2015, was a "great asset" to the company, and was "a hard worker with a great attitude." She said that the Appellant took medical leave from April 2016 to January 2017 due to heart complications and that he was allowed to take as much time as he needed. The owner stated that the Appellant had "built a strong, trustworthy relationship" with clients and that she would do anything necessary to help him comply with alternative sentencing.

Mrs. Branham explained that in 2016, the Appellant contracted a MRSA infection, which caused him to have open heart surgery. She said that he had three strokes and "got lesions on the brain" and that he was seen by neurologists and "heart doctors." The Appellant was a drug user and probably contracted the MRSA infection from dirty needles. Mrs. Branham said that the Appellant became depressed and began using drugs after her husband was killed in a car accident in 2011. She said that she was sorry for what the Appellant did to the victim but that the Appellant "suffered a great deal" in 2016 due to his medical problems and "almost died." The Appellant knew drugs played a large part in his actions on July 5, 2015, and was willing to get help to stop using them. At the time of sentencing, though, he had not received any drug treatment. Mrs. Branham said that the Appellant was having trouble getting into a treatment program because he did not have medical insurance but that MeHarry Rehabilitation Center recently had accepted him for in-patient treatment.

On cross-examination, Mrs. Branham testified that the Appellant graduated from high school in Memphis, attended college, and obtained an electrical certificate. He began using drugs after Mrs. Branham's husband died. She said that she recently had learned he was addicted to heroin and that his addiction became worse after he moved to Nashville. Mrs. Branham acknowledged that the Appellant's medical problems began in 2016, after he robbed the victim, and she said that he would live with the mother of his children if he received alternative sentencing.

The Appellant gave an allocution in which he stated that he was "truly sorry" for hurting the victim and that the incident "haunts me every day of my life." He stated that his parents raised him to be respectful, that he was the first male in his family to go to college, and that he and his fiancée had been in a relationship for fifteen years and had two children. He became a drug addict after his grandmother died and his father was killed. On the day of the crime, he went to Kroger, saw the victim's purse, and "stuck

[his] hand out the window and pulled at the purse." He said that he did not intend for the victim to get hurt and that he was sorry for taking her property.

The State introduced the Appellant's presentence report into evidence. According to the report, the then thirty-two-year-old Appellant graduated from high school and received an electrical mechanic diploma at Vatterott College. In the report, the Appellant described his mental health as "fair." He stated that he became irritated easily due to problems with his thoughts and that he took Prozac and melatonin. Medical records showed that the Appellant had MRSA, a stroke, and heart valve repair in 2016 and that he suffered residual motor and memory deficits. The Appellant said in the report that he used to smoke marijuana but that he had not used the drug in one year. He also said he did not use any other drugs. However, the investigating officer for the report found past use of heroine, opioids, and cocaine in the Appellant's "paperwork." The Appellant reported employment at Johnson Solutions Temporary Cleaning Service, Trojan Labor, and Logan's Steakhouse. The report showed no prior convictions but that the Appellant had a case involving theft of property less than $500 "open" with an "offense date" of December 8, 2016, and "appearance date" of December 7, 2017.

Defense counsel advised the trial court that the Appellant "has no criminal record. He is eligible for 40-35-313." The trial court noted that the victim was seriously injured and that the court "takes that into great consideration." See Tenn. Code Ann. § 40-35-114(6). The court also found that the Appellant had no hesitation about committing a crime when the risk to human life was high. See Tenn. Code Ann. § 40-35-114(10). Addressing confinement, the trial court found that confinement in this case was particularly suited to provide an effective deterrence to others likely to commit similar offenses under Tennessee Code Annotated section 40-35-103(1)(B). The court then stated as follows:

> Another factor the Court considers is simply the nature of this particular offense. Any time you do something like this a victim is very vulnerable. And another, I think, major factor -- and, again, referring to what [defense counsel] referred to. He talked about: "Well, here is an individual who is not eighteen years old." He was, actually, thirty years old at the time. He was mature enough to understand that one should not commit a crime such as this, as opposed to an eighteen year-old who doesn't have all the wherewithal that most adults have.
>
> So, having said all of that, the Court believes that the proper sentence in this case will be four years to serve.

## II. Analysis

### A. Judicial Diversion

First, the Appellant contends that the trial court erred by denying his request for judicial diversion "despite the uncontroverted assertion that he was a qualified defendant" and requests that this court review the trial court's decision de novo because the trial court failed to address the factors applicable to judicial diversion. The State argues that the court properly denied the Appellant's request for judicial diversion. We conclude that the Appellant is not entitled to relief.

Pursuant to Tennessee Code Annotated section 40-35-313(a)(1)(B)(i)(a)-(e), a defendant is eligible for judicial diversion when he or she is found guilty or pleads guilty or nolo contendere to a Class C, D, or E felony; is not seeking deferral for an offense committed by an elected official; is not seeking deferral for a sexual offense; has not been convicted of a felony or a Class A misdemeanor previously and served a sentence of confinement; and has not been granted judicial diversion or pretrial diversion previously. Additionally, in determining whether to grant a defendant judicial diversion, the trial court must consider all of the following factors: (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the status of the defendant's physical and mental health, (6) the deterrence value to the defendant and others, and (7) whether judicial diversion will serve the interest of the public as well as the defendant. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)). The record must reflect that the trial court has taken all of the factors into consideration, and "we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision." Id. Furthermore, "[t]he court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others." Id. When reviewing a trial court's decision to grant or deny judicial diversion, the standard of review is abuse of discretion with a presumption of reasonableness. State v. King, 432 S.W.3d 316, 327 (Tenn. 2014). However, if the trial court failed to weigh and consider the relevant factors, this court may conduct a de novo review or remand the case for reconsideration. Id. at 328.

Turning to the instant case, the State noted during oral arguments that the Appellant advised the trial court that he was "eligible for 40-35-313" but did not advise the court that he was requesting "judicial diversion." The State also noted that a copy of the Appellant's application for judicial diversion was not in the trial record. The State

- 5 -

questioned whether the Appellant filed an application and whether the trial court considered judicial diversion. Defense counsel did not respond to the State's comments at oral arguments or file a motion with this court to supplement the record with the application for judicial diversion and the accompanying certificate of eligibility issued by the Tennessee Bureau of Investigation (TBI).

In our view, the trial court did not consider judicial diversion. The court never mentioned "judicial diversion" in its ruling, never mentioned "Parker" or "Electroplating," and did not cite to any of the seven factors that the court was required to consider. That said, nothing indicates the Appellant applied for judicial diversion. An application for judicial diversion and a certificate of eligibility that must be issued by the TBI are not in the trial or appellate records. No order for judicial diversion may be entered without "a certificate from the [TBI] stating that the defendant does not have a prior felony or Class A misdemeanor conviction." Tenn. Code Ann. § 40-35-313(a)(3)(A). Given the Appellant's theft charge,[1] which was pending at the time of sentencing and apparently still pending at the time of oral arguments, we question whether the TBI would have certified the Appellant's eligibility for judicial diversion. See State v. Thomas David Johnson, No. M2009-01761-CCA-R3-CD, 2010 WL 4812798, at *23 (Tenn. Crim. App. at Nashville, Nov. 24, 2010) (noting that at time of sentencing, TBI had not certified defendant's eligibility for judicial diversion due to "an unresolved charge"). Because the Appellant has failed to establish that he was statutorily qualified for judicial diversion, the trial court did not err by failing to consider judicial diversion. See id.

That said, even if the Appellant filed an application for judicial diversion and complied with the statutory requirement of certification by the TBI, we conclude from the adequate record before us that judicial diversion is not appropriate in this case. First, the Appellant's amenability to correction is poor. Although the Appellant expressed remorse for the crime, he was arrested for theft while this case was pending, and nothing indicates the theft case has been resolved in his favor. It is the Appellant's burden to prove that he is a suitable candidate for judicial diversion. See State v. Faith Renea Irwin Gibson, No. E2007-01990-CCA-R3-CD, 2009 WL 1034770, at *4 (Tenn. Crim. App. at Knoxville, Apr. 17, 2009). Second, the circumstances of the offense weigh against granting judicial diversion. The Appellant grabbed the purse from the unsuspecting victim, an older female, while she was loading her groceries into the trunk of her car and, when she also grabbed her purse, he accelerated his vehicle until she fell. The victim was seriously injured and suffered pain for months. Next, the Appellant's criminal record and social

---

[1] At the time of the alleged offense, Class A misdemeanor theft was defined as theft of property valued $500 or less. Tenn. Code Ann. § 39-14-105(a)(1) (2014). Effective January 1, 2017, Class A misdemeanor theft became defined as theft of property valued one thousand dollars or less.

- 6 -

history weigh in favor of granting judicial diversion. The thirty-one-year-old Appellant graduated from high school, attended college, and did not have any prior criminal convictions at the time of sentencing. He has a good relationship with his family, is active in his children's lives, and has maintained employment.

The fifth factor, though, the Appellant's physical and mental health, weighs against granting judicial diversion. Of particular concern, the Appellant has been addicted to drugs since 2011, four years before the crime. However, he has never received treatment, even after his drug use caused him to contract MRSA and resulted in his having heart surgery and a stroke. We find it particularly telling that the Appellant stated in his presentence report that he only used marijuana when the evidence showed use of heroin, opioids, and cocaine. The final two factors, the deterrence value to the defendant and others and whether judicial diversion will serve the interest of the public as well as the defendant, also weigh against granting judicial diversion. Considering the seven factors de novo, we conclude that the Appellant is not entitled to judicial diversion.

## B. Probation

In the alternative, the Appellant contends that the trial court erred by denying his request for probation. Appellate review of the length, range, or manner of service of a sentence imposed by the trial court is to be reviewed under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012); see also State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the standard to alternative sentencing). In sentencing a defendant, the trial court shall consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the Appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the Appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

An appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). The Appellant's sentence meets this requirement. Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code

Ann. § 40-35-102(6). As a Range I, standard offender convicted of a Class C felony, the Appellant is considered a favorable candidate for alternative sentencing. Tennessee Code Annotated section 40-35-103(1) sets forth the following sentencing considerations which are utilized in determining the appropriateness of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

See also State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

Initially, the Appellant contends that our review of the trial court's denial of probation should be de novo because the court failed to consider the purposes of the Sentencing Act "properly or thoroughly." While the trial court's pronouncement of sentence was relatively brief, we believe the court's statements demonstrate that the court considered the purposes and principles of the Act and the list of sentencing factors. During the sentencing hearing, the trial court stated that it had read the presentence report. At the conclusion of the hearing, the trial court addressed enhancing and mitigating factors and imposed a sentence of four years, just one year above the minimum statutory punishment of three years. See Tenn. Code Ann. § 40-35-112(a)(3). In addressing alternative sentencing, the trial court found that confinement was particularly suited to provide an effective deterrence to others likely to commit similar offenses. The court then stated that "the nature of this particular offense" and the Appellant's committing the crime at thirty years old warranted confinement. In our view, the court's concern about the Appellant's age at the time of the robbery and his being "mature enough to understand that one should not commit a crime such as this" demonstrates that the court considered the Appellant to lack potential for rehabilitation.

Given the Appellant's years of drug use without seeking treatment and his denial of drug use in the presentence report, we agree with the trial court. Accordingly, we conclude that the trial court did not abuse its discretion by ordering that the Appellant serve his four-year sentence in confinement.

### III. Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE